UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KURT J. MITTS, Individually and on Behalf of All Others Similarly Situated, | ) ) | No.  2:19-cv-3961 Judge |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | |
| L BRANDS, INC., LESLIE H. WEXNER, and STUART B. BURGDOERFER, | ) ) ) | CLASS ACTION (Jury Trial Demanded) |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

COMPLAINT FOR VIOLATION
OF THE FEDERAL SECURITIES LAWS

Plaintiff Kurt J. Mitts ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon information and belief as to the investigation conducted by Plaintiff's counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by L Brands, Inc. ("L Brands" or the "Company"), securities analyst reports, press releases, and other public statements issued by, or about, the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action brought on behalf of all purchasers of L Brands securities between May 31, 2018 and November 19, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.       Founded in 1963, L Brands is a specialty retailer of women's intimate apparel and personal care, beauty and home fragrance products. The Company's merchandise is sold through specialty retail stores in the United States, Canada, the United Kingdom, Ireland and China, as well as via websites and international franchise, license and wholesale partners.

3.       During the Class Period, the Company's portfolio of brands included *Victoria's Secret*, *PINK*, *Bath & Body Works*, *La Senza* and *Henri Bendel*. *Victoria's Secret, PINK* and *La Senza* are brands that are primarily associated with women's intimate apparel. *Bath & Body Works* is a specialty retailer of body care, home fragrance products, soaps and sanitizers. *Henri Bendel* was a seller of handbags, jewelry and other accessory products.

4.       In November 2018, L Brands announced that it was terminating the operations of *Henri Bendel* and "pursuing alternatives" with respect to its *La Senza* business so that it could better focus on the operations of its two key brands, *Victoria's Secret* and *Bath & Body Works*.

In January 2019, the Company divested its ownership interest in *La Senza* to an affiliate of Regent L.P., a global private equity firm.

5.     Prior to and during the Class Period, L Brands' *Victoria's Secret* and *PINK* (whose intimate apparel is primarily marketed to college-age students) businesses began to experience deteriorating operating performance because of, among other things, increased competition from new lingerie brands, such as *Aerie*, *ThirdLove*, and *Savage X Fenty*.

6.     In an attempt to drive sales and retain market share in the face of increasing competition, *Victoria's Secret* and *PINK* engaged in heavy promotional activities by offering consumers large discounts and even giving items free of charge. While this marketing strategy helped to mitigate sales declines, it adversely impacted the Company's profit margins and cash flows. For example, while the combined annual sales of *Victoria's Secret* and *PINK* declined by only 5% between fiscal 2016 and 2018, from $7.8 billion to $7.4 billion, their combined annual operating income declined by approximately *61%* during the same period, from $1.2 billion to $462 million.

7.     Since *Victoria's Secret* and *PINK* account for more than half of L Brands' total business, their deteriorating operating performance had a deleterious impact on the Company's liquidity. For example, the annual cash flows generated by L Brands' operations declined from $2.0 billion in fiscal 2016 to $1.4 billion in fiscal 2018, while its net debt (defined as total debt minus cash and cash equivalents) increased from $7.0 billion at the end of fiscal 2016 to $7.6 billion at the end of fiscal 2018.

8.     Observing the deteriorating operating performance at the Company's flagship *Victoria's Secret* and *PINK* businesses, as well as L Brands' decreasing operating cash flows and rising debt levels, securities analysts frequently questioned Defendants (defined below) during

the Class Period about the sustainability of the Company's dividends. In response, Defendant Stuart B. Burgdoerfer ("Burgdoerfer") repeatedly misled investors by stating that L Brands had sufficient cash flow and cash on hand to sustain its dividends and that the Company "in its history, has never reduced the dividend." For example, during the Class Period, Defendant Burgdoerfer stated, in pertinent part, as follows:[1]

May 31, 2018:

So we have returned capital through regular dividends. **The company, in its history, has never reduced the dividend**. **We believe that a large number of shareholders place high value on the dividend**. That's implicit to the question you're asking. **We have the cash flow needed and cash balances, et cetera, to sustain the dividend**. It is a very high payout ratio right now, I realize that, and a very high yield. But again, **we believe that the dividend is important to shareholders and that we're able to, with current year cash flow, sustain our dividend**.

June 6, 2018:

. . . **we're confident that we can maintain the dividend**. As you've looked at **our cash flow results, the free cash flow of the business is sufficient to pay the dividend**. **And we've been carrying excess cash as a business beyond what's needed for the day-to-day working capital needs and financing needs of the business. So we're comfortable with our cash position, our liquidity position, our capital structure. And we're comfortable with the current dividend level in the business.**

August 23, 2018:

**We look at it [the dividend] regularly**. Management does. **We have the appropriate conversations with our board**. **Obviously, a lot of our earnings and our cash come in the fourth quarter**. We have conversations about this regularly. But importantly, as **we have more insight into holiday results, we're comfortable with the dividend today, have the free cash flow to support it**. But it's obviously something that should be looked at periodically, and we do. **We're comfortable with it**.

9.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically,

---

[1] Unless otherwise noted, all emphasis herein is added.

4

Defendants made false and/or misleading statements and/or failed to disclose that: (i) the *Victoria's Secret* and *PINK* businesses were having a material adverse effect on the Company's cash flow, liquidity and debt levels; (ii) Defendants lacked a reasonable basis for their positive statements about the ability of the Company to sustain its dividend; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

10. Just weeks after Defendants issued this series of false and misleading statements about the Company's dividends, L Brands announced that it was cutting its dividend *in half* so that it could pay down existing debt.

11. On this news, the price of L Brands common stock declined approximately *18%* on extremely heavy trading volume, from $34.55 per share on November 19, 2018, to $28.43 per share on November 20, 2018.

12. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. Sections 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. Section 240.10b-5. This Court has jurisdiction over the subject matter of this action under Section 27 of the Exchange Act, 15 U.S.C. Section 78aa, and 28 U.S.C. Section 1331, because this is a civil action arising under the laws of the United States of America.

14. Venue is proper in this District under Section 27(c) of the Exchange Act, 15 U.S.C. Section 78aa(c), and 28 U.S.C. Section 1391(b) - (d). The Company maintains its principal executive offices in this District, and many of the acts charged herein, including the

5

dissemination of materially false and misleading information, occurred in substantial part in this District.

15.     In connection with the acts alleged in this Complaint, Defendants directly or indirectly, used the means and instrumentalities of interstate commerce, including, without limitation, the U.S. mail, interstate telephone and other electronic communications, and the facilities of the New York Stock Exchange ("NYSE"), a national securities exchange.

## PARTIES

16.     Plaintiff, as set forth in the accompanying certification incorporated by reference herein, purchased L Brands securities during the Class Period and has been damaged thereby.

17.     Defendant L Brands is a specialty retailer of women's intimate apparel and personal care and beauty products.  The Company maintains its principal executive offices in Columbus, Ohio and its common stock is listed and trades on the NYSE under the ticker symbol "LB."  Defendant L Brands' fiscal year ends on the Saturday nearest to January 31.

18.     Defendant Leslie H. Wexner ("Wexner") has served as L Brands' Chairman of the Board of Directors and Chief Executive Officer ("CEO") at all relevant times.

19.     Defendant Burgdoerfer has served as L Brands' Executive Vice President and Chief Financial Officer at all relevant times.

20.     Defendants Wexner and Burgdoerfer are collectively referred to hereinafter as the "Individual Defendants."  Unless otherwise noted, L Brands and the Individual Defendants are collectively referred to herein as "Defendants."

21.     Because of the Individual Defendants' executive positions, they each had access to the undisclosed adverse information about L Brands' business, operations, products, operational trends, liquidity, markets, and present and future business prospects via internal

6

corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof.

22.     It is appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of Defendants identified above.  Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, controls, growth, products, liquidity, demands and present and future business prospects, as alleged herein.  In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

23.     As officers and controlling persons of a publicly-held company whose common stock is registered with the SEC pursuant to the Exchange Act and trades on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, products, markets, management, controls, liquidity, demands and present and future business prospects.  In addition, the Individual Defendants each had a duty to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and

accurate information. Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

24.     The Individual Defendants, because of their positions of control and authority as Officers and/or Directors of the Company, were able to, and did, control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

25.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of L Brands securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding L Brands' business, operations, products, markets, management, controls, liquidity, demands, and present and future business prospects, and the intrinsic value of L Brands securities; and (ii) caused Plaintiff and the Class to purchase L Brands securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### Background

26.     Founded in 1963, L Brands is a specialty retailer of women's intimate apparel and personal care, beauty and home fragrance products. The Company's merchandise is sold through specialty retail stores in the United States, Canada, the United Kingdom, Ireland and China, as well as via websites and international franchise, license and wholesale partners.

8

27.     During the Class Period, the Company's portfolio of brands included *Victoria's Secret*, *PINK*, *Bath & Body Works*, *La Senza* and *Henri Bendel*.  *Victoria's Secret, PINK* and *La Senza* are brands that are primarily associated with women's intimate apparel.  *Bath & Body Works* is a specialty retailer of body care, home fragrance products, soaps and sanitizers.  *Henri Bendel* was a seller of handbags, jewelry and other accessory products.

28.     In November 2018, L Brands announced that it was terminating the operations of *Henri Bendel* and "pursuing alternatives" with respect to its *La Senza* business so that it could better focus on the operations of its two key brands, *Victoria's Secret* and *Bath & Body Works*.  In January 2019, the Company divested its ownership interest in *La Senza* to an affiliate of Regent L.P., a global private equity firm.

29.     Prior to and during the Class Period, L Brands' *Victoria's Secret* and *PINK* (whose intimate apparel is primarily marketed to college-age students) businesses began to experience deteriorating operating performance because of, among other things, increased competition from new lingerie brands, such as *Aerie*, *ThirdLove*, and *Savage X Fenty*.

30.     In an attempt to drive sales and retain market share in the face of increasing competition, *Victoria's Secret* and *PINK* engaged in heavy promotional activities by offering consumers large discounts and even giving items free of charge.  While this marketing strategy helped to mitigate sales declines, it adversely impacted the Company's profit margins and cash flows.  For example, while the combined annual sales of *Victoria's Secret* and *PINK* declined by only 5% between fiscal 2016 and 2018, from $7.8 billion to $7.4 billion, their combined annual operating income declined by approximately *61%* during the same period, from $1.2 billion to $462 million.

31.     Since *Victoria's Secret* and *PINK* account for more than half of L Brands' total business, their deteriorating operating performance had a deleterious impact on the Company's liquidity.  For example, the annual cash flows generated by L Brands' operations declined from $2.0 billion in fiscal 2016 to $1.4 billion in fiscal 2018, while its net debt (defined as total debt minus cash and cash equivalents) increased from $7.0 billion at the end of fiscal 2016 to $7.6 billion at the end of fiscal 2018.

32.     Observing the deteriorating operating performance at the Company's flagship *Victoria's Secret* and *PINK* businesses, as well as L Brands' decreasing operating cash flows and rising debt levels, securities analysts frequently questioned Defendants during the Class Period about the sustainability of the Company's dividends.   In response, Defendant Burgdoerfer repeatedly misled investors by stating that L Brands had sufficient cash flow and cash on hand to sustain its dividends and that the Company "in its history, has never reduced the dividend."  For example, during the Class Period, Defendant Burgdoerfer stated, in pertinent part, as follows:

May 31, 2018:

So we have returned capital through regular dividends. **The company, in its history, has never reduced the dividend**. **We believe that a large number of shareholders place high value on the dividend**. That's implicit to the question you're asking. **We have the cash flow needed and cash balances, et cetera, to sustain the dividend**. It is a very high payout ratio right now, I realize that, and a very high yield. But again, **we believe that the dividend is important to shareholders and that we're able to, with current year cash flow, sustain our dividend**.

June 6, 2018:

. . . **we're confident that we can maintain the dividend**. As you've looked at **our cash flow results, the free cash flow of the business is sufficient to pay the dividend**. **And we've been carrying excess cash as a business beyond what's needed for the day-to-day working capital needs and financing needs of the business. So we're comfortable with our cash position, our liquidity position, our capital structure. And we're comfortable with the current dividend level in the business.**

August 23, 2018:

**We look at it [the dividend] regularly**. Management does. **We have the appropriate conversations with our board**. **Obviously, a lot of our earnings and our cash come in the fourth quarter**. We have conversations about this regularly. But importantly, as **we have more insight into holiday results, we're comfortable with the dividend today, have the free cash flow to support it**. But it's obviously something that should be looked at periodically, and we do. **We're comfortable with it**.

### L Brands' Class Period SEC Filings Violate SEC Disclosure Regulations

33.     Item 2 of Form 10-Q required L Brands to furnish the information called for under Item 303 of Regulation S-K [17 C.F.R. §229.303], *Management's Discussion and Analysis of Financial Condition and Results of Operations* ("MD&A") during the Class Period.  In 1989, the SEC issued interpretative guidance associated with the requirements of Item 303 of Regulation SK, which states, in pertinent part, as follows:

> A disclosure duty exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation.

34.     In 2003, the SEC issued additional interpretative guidance associated with the requirements of Item 303 of Regulation S-K.  Concerning, in particular, an entity's liquidity, such guidance states, in pertinent part, as follows:

> Our rules require companies to provide disclosure in the related categories of liquidity and capital resources. This information is critical to an assessment of a company's prospects for the future and even the likelihood of its survival. A company is required to include in MD&A the following information, to the extent material:
>
> - historical information regarding sources of cash and capital expenditures;
>
> - an evaluation of the amounts and certainty of cash flows;
>
> - the existence and timing of commitments for capital expenditures and other known and reasonably likely cash requirements;
>
> - discussion and analysis of known trends and uncertainties;

11

- a description of expected changes in the mix and relative cost of capital resources;

- indications of which balance sheet or income or cash flow items should be considered in assessing liquidity; and

- a discussion of prospective information regarding companies' sources of and needs for capital, except where otherwise clear from the discussion. [Footnotes omitted.]

35. During the Class Period, the MD&A that L Brands filed with the SEC on Forms 10-Q contained materially false and misleading disclosures about the Company's liquidity and failed to disclose material events and uncertainties associated with L Brands' cash requirements, liquidity and/or capital resources, which were then known to management and were reasonably likely to have a material effect on the Company's future cash requirements, liquidity and/or capital resources.

36. Item 1A of Form 10-Q required L Brands to furnish the information called for under Item 503 of Regulation S-K [17 C.F.R. §229.503], *Risk Factors*. Item 503 of Regulation S-K required L Brands to disclose the most significant matters making an investment in the Company risky.

37. The Forms 10-Q that L Brands filed with the SEC during the Class Period failed to disclose material risks associated with its cash requirements, liquidity and/or capital resources that made an investment in the Company risky.

38. Item 4 of Form 10-Q required L Brands to furnish the information called for under Item 307 of Regulation S-K [17 C.F.R. §229.307], *Disclosure Controls and Procedures*. Item 307 of Regulation S-K required L Brands' Forms 10-Q during the Class Period to disclose Defendant Wexner's and Burgdoerfer's conclusions about the effectiveness of L Brands' disclosure controls and procedures, defined by relevant regulation as the controls and procedures

designed to ensure that information required to be disclosed in reports filed with the SEC is appropriately recorded, processed, summarized and reported.

39. During the Class Period, L Brands falsely and misleadingly represented in its Forms 10-Q that its disclosure controls were operating effectively when they were not, as alleged herein. During the Class Period, these materially false and misleading representations were certified by Defendants Wexner and Burgdoerfer.

### Materially False and Misleading Statements Issued During the Class Period

40. The Class Period begins on May 31, 2018. On that day, L Brands presented at the RBC Capital Markets Consumer and Retail Conference. During the conference, Defendant Burgdoerfer called the payment of dividend "safe" and reassured investors about the sustainability of the Company's dividends, claiming that: (i) L Brands had the "cash flow needed and cash balances, et cetera, to sustain the dividend;" (ii) "the dividend is important to shareholders and that we're able to, with current year cash flow, sustain our dividend;" and (iii) "[t]he [C]ompany, in its history, has never reduced the dividend." The following exchange, in pertinent part, transpired:

Brian Jay Tunick – Analyst, RBC Capital Markets:

I guess there's a lot of dividend and yield investors in the room, and we've been getting a lot of calls on the 7% dividend yield. Can you maybe talk about, when you reduced your cash flow and you reduced your CapEx guidance for the year, how important is the dividend? And how do you guys think about capital allocation?

Defendant Burgdoerfer:

Well, we think that -- thanks for the question, Brian. **We think that dividend is very important**. So we have returned capital through regular dividends. **The company, in its history, has never reduced the dividend**. **We believe that a large number of shareholders place high value on the dividend**. That's implicit to the question you're asking. **We have the cash flow needed and cash balances, et cetera, to sustain the dividend**. It is a very high payout ratio right now, I realize that, and a very high yield. **But again, we believe that the dividend is important**

**to shareholders and that we're able to, with current year cash flow, sustain our dividend**. Certainly, we get questions from other investors and have debate as we should about the magnitude of our share repurchase program. We are buying back some stock. You are aware we authorized a program, and we update every quarter about the activity there. But one could say that, that's a modest program in relation to the capitalization of the company, but we think a balanced approach makes sense. We do believe there is a long record of companies that thought that they knew for sure it was a good buy, and time proved them wrong. We do believe that the value of the company is substantially greater than where it's trading at today, but we have to prove it. The company would seem -- has really -- and folks have written about this. The only thing that management really focuses on is performance. When you look at valuation, I mean, it's at the very low end of a lot of ranges. **So back to the dividend, the dividend is very safe**.

41.     On June 6, 2018, L Brands presented at the Robert W. Baird Global Consumer, Technology and Services Conference.  During the conference, Defendant Burgdoerfer again reassured investors about the sustainability of the Company's dividends, stating, in pertinent part, as follows:

The dividend is a very important source of return for many shareholders, we believe. Our ability to maintain the dividend, even in this time period where the payout ratio is very high and the yield is very high, **we're confident that we can maintain the dividend. As you've looked at our cash flow results, the free cash flow of the business is sufficient to pay the dividend**. And we've been carrying excess cash as a business beyond what's needed for the day-to-day working capital needs and financing needs of the business. **So we're comfortable with our cash position, our liquidity position, our capital structure. And we're comfortable with the current dividend level in the business**. And we believe we're in an operating period where we're going to turn this business, and specifically the lingerie and PINK businesses within Victoria's. And those relationships would normalize to more typical levels that we've seen historically and that you'd see in most major companies on a broad basis, but **we're very comfortable with the dividend**.

42.     On June 7, 2018, L Brands filed with the SEC its Form 10-Q for the quarter ended May 5, 2018 (the "Q1 2018 Form 10-Q") signed by Defendant Burgdoerfer.  The Q1 2018 Form 10-Q contained materially false and misleading MD&A and risk factor disclosures.  As a result, the control disclosures in the Q1 2018 Form 10-Q, as well as Defendant Wexner's and Burgdoerfer's certifications thereon, were materially false and misleading.

14

43.     On August 22, 2018, L Brands issued a press release announcing its financial results for the 2018 second quarter, the period ended July 29, 2018.  The press release revealed that *Victoria's Secret* comparable sales during the 2018 second quarter continued to decline, from the already depressed 2017 second quarter level, on a year-over-year basis:[2]

### L BRANDS
### SECOND QUARTER 2018

**Comparable Sales Increase (Decrease) (Stores and Direct):**

| | Second Quarter 2018 | Second Quarter 2017 | Year-to-Date 2018 | Year-to-Date 2017 |
|---|---|---|---|---|
| Victoria's Secret[1] | (1%) | (14%) | —% | (14%) |
| Bath & Body Works[1] | 10% | 6% | 9% | 4% |
| **L Brands[2]** | **3%** | **(8%)** | **3%** | **(9%)** |

[1] - Results include company-owned stores in the U.S. and Canada and direct sales.
[2] - Results include company-owned stores in the U.S., Canada, the U.K. and Greater China and direct sales.

**Comparable Sales Increase (Decrease) (Stores Only):**

| | Second Quarter 2018 | Second Quarter 2017 | Year-to-Date 2018 | Year-to-Date 2017 |
|---|---|---|---|---|
| Victoria's Secret[1] | (5%) | (11%) | (5%) | (11%) |
| Bath & Body Works[1] | 7% | 4% | 6% | 2% |
| **L Brands[2]** | **(1%)** | **(6%)** | **(2%)** | **(7%)** |

[1] - Results include company-owned stores in the U.S. and Canada.
[2] - Results include company-owned stores in the U.S., Canada, the U.K. and Greater China.

---

[2] According to L Brands' SEC filings, a store is typically included in the calculation of comparable sales when it has been open or owned 12 months or more and it has not had a change in selling square footage of 20% or more. Additionally, stores of a given brand are excluded from the comparable sales calculation if total selling square footage for the brand in the mall changes by 20% or more through the opening or closing of a second store.

44. The press release also announced that Denise Landman, the CEO of *PINK*, had decided to retire at the end of 2018.

45. On August 23, 2019, L Brands held a conference call with analysts and investors to discuss the Company's operations and earnings release. During the conference call, a securities analyst questioned management about L Brands' dividend. In response, Defendant Burgdoerfer again reassured investors about the sustainability of the Company's dividends - noting that much of L Brands' earnings and cash flow are generated during the fourth quarter of the year and that because "we have more insight into holiday results, we're comfortable with the dividend today, have the free cash flow to support it." The following exchange, in pertinent part, transpired:

Michael Charles Binetti - Research Analyst, Crédit Suisse AG:

**You guys have remained very committed to a very, very high dividend yield despite, I think, the operating results coming in below some of your hopes for a bit here**. I know you've worked hard to moderate CapEx down a few times here along the way. But could you help us with how you think about holding steady the approach to the capital deployment in contrast to the variances you've seen in the operating plans?

Defendant Burgdoerfer:

Important subject, obviously, important source of return for shareholders. Obviously, the payout ratio is abnormally high. The yield is very high. **We look at it regularly. Management does. We have the appropriate conversations with our board**. **Obviously, a lot of our earnings and our cash come in the fourth quarter**. We have conversations about this regularly. **But importantly, as we have more insight into holiday results, we're comfortable with the dividend today**, **have the free cash flow to support it**. But it's obviously something that should be looked at periodically, and we do. **We're comfortable with it**. We expect to -- one way to deal with the payout ratio is obviously to increase earnings. That's what we're focused on. **Earnings increases would drive obviously an increase in the share price and get dividend yields and relationships like that in a more normal range**. But with that said, our operating performance has lagged our expectations over the last several years. So we look at it periodically in a rigorous way. That will continue. **We're comfortable with it based on what we know at this point, and we'll continue to look at it**. Thank you.

46. On September 7, 2018, L Brands filed with the SEC its Form 10-Q for the quarter ended July 29, 2018 (the "Q2 2018 Form 10-Q") signed by Defendant Burgdoerfer. The Q2 2018 Form 10-Q contained materially false and misleading MD&A and risk factor disclosures. As a result, the control disclosures in the Q2 2018 Form 10-Q, as well as Defendant Wexner's and Burgdoerfer's certifications thereon, were materially false and misleading.

47. On September 13, 2018, L Brands issued a press release announcing it was closing all of *Henri Bendel* stores and the *Henri Bendel* e-commerce website in January 2019. Defendant Wexner stated L Brands was taking such action "to improve [C]ompany profitability and focus on our larger brands that have greater growth potential."

48. On November 8, 2018, L Brands issued a press release stating that it expected to report loss per share of approximately $0.17 during the 2018 third quarter. The expected loss per share included a pretax cash charge of $20 million related to the closure of the Company's *Henri Bendel* business and an approximate pretax non-cash impairment charge of $80 million related to certain *Victoria's Secret* store assets.

49. The statements referenced in ¶¶ 40-42 and 45-47 above were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

a. that the *Victoria's Secret* and *PINK* businesses were having a material adverse effect on the Company's cash flow, liquidity and debt levels;

b. that Defendants lacked a reasonable basis for their positive statements about the ability of the Company to sustain its dividend;

c. that the MD&A disclosures in filings L Brands made with the SEC were materially false and misleading;

           d.       that the risk factor disclosures in filings L Brands made with the SEC were materially false and misleading;

           e.       that the representations about L Brands' disclosure controls in filings the Company made with the SEC were materially false and misleading;

           f.       that the certifications issued by Defendants Wexner and Burgdoerfer on L Brands' disclosure controls were materially false and misleading; and

           g.       that, based on the foregoing, Defendants lacked a reasonable basis for their positive statements about L Brands' then-current business operations and future financial prospects.

## The Truth Begins to Emerge

50.     After the market closed on November 19, 2018, L Brands issued a press release announcing its financial results for the 2018 third quarter, the period ended November 3, 2018. The press release also announced that L Brands intended to reduce its annual ordinary dividend to $1.20 from $2.40 beginning with the quarterly dividend to be paid in March 2019 in order to deleverage Company's balance sheet over time.

51.     In response to this news, the price of L Brands common stock declined approximately *18%* on extremely heavy trading volume, from $34.55 per share on November 19, 2018 to $28.43 per share on November 20, 2018.

52.     The market for L Brands securities was open, well-developed and efficient at all relevant times. As a result of the alleged materially false and/or misleading statements, and/or omissions of material fact alleged herein, L Brands securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased L Brands securities

relying upon the integrity of the market price of L Brands securities and market information relating to L Brands, and have been damaged thereby.

53.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of L Brands securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

54.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about L Brands' business, controls, liquidity and its operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of L Brands, its business, products, liquidity, and financial prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing L Brands securities at artificially inflated prices, thus causing the damages complained of herein.

## Additional Scienter Allegations

55.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the

issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding L Brands, their control over, and/or receipt and/or modification of L Brands' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning L Brands, participated in the fraudulent scheme alleged herein.

56. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants. Given their executive level positions with L Brands, the Individual Defendants controlled the contents of L Brands' public statements during the Class Period. The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, each of the Individual Defendants was responsible for the accuracy of L Brands' corporate statements and are, therefore, responsible and liable for the representations contained therein.

57. Plaintiff also alleges that scienter of Defendants Wexner and Burgdoerfer who, as executive officers of the Company, knew or recklessly ignored facts related to the core operations of L Brands, which can be imputed to L Brands.

58.     In addition, the scienter of the Defendants is underscored by the Sarbanes-Oxley mandated certifications of Defendants Wexner and Burgdoerfer, which acknowledged their responsibility to investors for establishing and maintaining controls to ensure that material information about L Brands was made known to them and that the Company's disclosure-related controls were operating effectively.

## LOSS CAUSATION

59.     As detailed herein, during the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of L Brands securities.  This scheme operated as a fraud or deceit on Class Period purchasers of L Brands securities by failing to disclose and misrepresenting the adverse facts detailed herein.  When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of L Brands securities declined significantly as the prior artificial inflation came out of the price of L Brands securities.

60.     By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of L Brands' business, prospects and operations.  Defendants' false and misleading statements had the intended effect and caused L Brands securities to trade at artificially inflated levels throughout the Class Period, reaching as high as $38.00 per share on November 12, 2018.  As a result of their purchases of L Brands securities at artificially inflated prices during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

61.     When the truth about the Company was revealed to the market, the price of L Brands securities fell significantly.  The decline removed the inflation from the price of L Brands securities, causing real economic loss to investors who had purchased L Brands securities during the Class Period.  The decline in the price of L Brands securities when the corrective disclosure

came to light was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market. The timing and magnitude of the price decline in L Brands securities negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.

62. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of L Brands securities and the subsequent significant decline in the value of L Brands securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## NO SAFE HARBOR

63. The statutory safe harbor provided for forward-looking statements under the Private Securities Litigation Reform Act of 1995 does not apply to any of the allegedly false statements plead in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not adequately identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of L Brands who knew that the statement was false when made.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

64. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired L Brands securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

65. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, L Brands securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by L Brands or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of L Brands;

- whether the Individual Defendants caused L Brands to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of L Brands securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

70.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- L Brands securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold L Brands securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

72. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule l0b-5 Promulgated Thereunder Against All Defendants)

73. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

74. During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

75.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

76.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for L Brands securities.  Plaintiff and the Class would not have purchased L Brands securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

77.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of L Brands securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

78.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.  For purposes of this Count, Defendants include the Individual Defendants.

79.     The Individual Defendants acted as controlling persons of L Brands within the meaning of Section 20(a) of the Exchange Act.

80.     By virtue of their positions as officers and/or directors of L Brands, and/or their ownership of L Brands securities, the Individual Defendants had the power and authority to, and did, cause L Brands to engage in the wrongful conduct alleged.

81.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of L Brands securities during the Class Period.

82.     By reason of such conduct, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A.     Designating Plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding Plaintiff and other members of the Class damages together with interest thereon;

C.     Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, expert fees and other costs and disbursements; and

D.     Awarding Plaintiff and other members of the Class such other and further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED:  September 9, 2019                    Respectfully submitted,

                                                            s/ Richard S. Wayne
                                                            Richard S. Wayne (0022390)
                                                            William K. Flynn (0029536)
                                                            STRAUSS TROY CO., LPA
                                                            150 E. Fourth Street
                                                            Cincinnati, OH  45202-4018
                                                            (513) 621-2120 – Telephone
                                                            (513) 629-9426 – Facsimile
                                                            E-mail: rswayne@strausstroy.com
                                                            E-mail: wkflynn@strausstroy.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

13596232_1.docx